**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00328-CV**
_____

**WEN L. PATIENCE, Appellant**

**V.**

**SHANNON JACKSON, MONTGOMERY COUNTY DISTRICT ATTORNEY'S DEPARTMENT DA, ROMERO LEE, AND CARMEN R. MORALES, Appellees**

_____

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 24-07-10778-CV**
_____

**MEMORANDUM OPINION**

On September 5, 2024, the trial court signed a final order that granted a Motion to Dismiss and ordered that Wen L. Patience take nothing by her pro se claims in a lawsuit for malicious prosecution that she filed against a county district attorney's office and its employees who were involved in a criminal prosecution against her. Patience raises what she labels as eighty-eight issues in her appellant's brief. As more fully discussed below, we affirm the trial court's judgment.

1

## Background

On December 29, 2022, Patience filed a pro se lawsuit in a Fort Bend County District Court for what she described as "malicious prosecution" against an employee of the Montgomery County District Attorney's Office which she claimed to be pursuant to the Texas Tort Claims Act. Patience alleged the employee, whom she identified as Shanna Jackson, signed two criminal complaints, each of which resulted in the filing of a criminal information against Patience for a family violence offense. Her original petition identified what she categorized as three claims for which she sought to recover damages from Jackson: (1) malicious criminal prosecution, (2) perjury, and (3) intentional infliction of emotional distress.

On December 15, 2022, Jackson filed a motion to transfer venue to Montgomery County. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 15.015, 101.102.

On December 28, 2022, Patience amended her petition to name the "Montgomery County District Attorney's Department" as the defendant. She changed the style of her petition from *Wen L. Patience v. Shanna Jackson* to *Wen Lian Patience v. Montgomery County District Attorney's Department DA.* Patience alleged the Montgomery County District Attorney's Office instituted criminal charges, and she stated that her amended pleading dismissed Jackson as a defendant. Patience alleged the Montgomery County District Attorney's Office was liable for Jackson's conduct under the Tort Claims Act. Patience alleged venue was proper in

2

Fort Bend County because Patience resided there when her cause of action accrued. In addition to her claim for malicious prosecution, Patience added a claim under 42 U.S.C. section 1983, alleging that Jackson, assistant district attorney Lee Romero, and prosecuting state attorney Carmen Morales violated Patience's civil rights under color of law. She alleged the Montgomery County District Attorney's Office could have ascertained the falsity of the charges if its employees had exercised reasonable diligence in performing their duties, but while acting within the course and scope of their employment brought criminal cases against Patience without adequate justification.

In her first amended petition, Patience alleged Jackson falsely stated that the complainant, Jackson, is a member of Patience's family or household or had a dating relationship. She alleged Jackson, while working as an employee of the Montgomery County District Attorney's Office, commenced a criminal prosecution against Patience, initiated the proceeding by filing complaints that alleged Jackson is a member of Patience's family or household or had a dating relationship. She also alleged that Jackson knew the statement was false when she filed her complaints against Patience and made the statements with the intent to deceive or mislead Romero, who filed the information that accused Patience of having committed the offense of Terroristic Threat of Family/Household and Assault Causing Bodily Injury to Family. Patience sought to recover damages against the Montgomery

3

County District Attorney's Office for the loss of her employment as a teacher and sport coach, the cost of her defense against the criminal charges, and exemplary damages.

On January 3, 2023, Patience filed a response to the motion to transfer venue. She argued venue was mandatory in the county of her residence because Patience's first amended petition alleged that Jackson, Romero, and Morales defamed her by bringing false charges against her. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.017.

On January 18, 2023, the case was removed to federal court. On May 31, 2023, the United States District Court for the Southern District of Texas Houston Division ordered that Patience take nothing on all of her claims arising under the Constitution and laws of the United States, against the Montgomery County District Attorney's Office, Shannon Jackson, Lee Romero, and Carmen Morales, and dismissed with prejudice all of Patience's federal claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and *Bivens* claims. The court remanded all of Patience's state law causes of action to the Fort Bend County district court.

On May 9, 2024, Jackson filed a notice of hearing on her motion to transfer venue. The notice retained the original style of the case.

On May 10, 2024, Patience filed a Motion to Oppose Transfer and Request for Amendment and Orders. She argued the case should be transferred back to the

4

federal court because her claims involved federal questions such as alleged civil rights violations under section 1983.

On May 21, 2024, Patience filed a response to Jackson's motion to transfer venue. Patience stated that she had added Lee Romero, Carmen Morales, and the Montgomery County District Attorney's Office to her Second and Third Amended Petitions filed in federal court. She asked the trial court to "consider amending or reconsidering its decision to proceed with only one defendant in this case." She argued she needed to add the additional defendants "to fully adjudicate the claims of malicious prosecution and violations of 1983 rule and a Bivens claim by the plaintiff." She asked that the case be returned to federal district court.

Patience filed a motion for reconsideration. She argued the rapid speed with which the federal district court rendered judgment suggested judicial bias. Patience complained that the federal district judge denied her new motions as moot without a thorough review of the attached evidence. She stated that she had exhausted her appellate remedies in federal court. She argued that the opposing counsel obtained the federal court judgment by making misrepresentations that Patience misspelled Jackson's given name and by encouraging or allowing Shannon Jackson and Romero Lee to fabricate Jackson's name. She claimed opposing counsel shielded his clients' "criminal activity" by "misrepresenting that Christine Hodson's relationship status as Richard Patience's wife", that Jackson had intentionally fabricated Christine's

identity to portray her as a member of Patience's family; and, that opposing counsel was misleading the court by arguing that mistakenly entering Christine's surname as "Patience" did not create an inference that the state's attorneys lacked probable cause to file and prosecute Patience.

On July 1, 2024, the trial court denied Patience's Motion to Transfer the case back to federal district court. On July 2, 2024, the Fort Bend County 400th District Court found venue was improper in Fort Bend County, found venue was proper and mandatory in Montgomery County, and transferred the case to Montgomery County.

On July 24, 2024, Patience filed an Amended Original Petition in the 284th District Court of Montgomery County. The named defendants included Shannon Jackson a/k/a Shanna Jackson, Romero Lee a/k/a Lee Romero, Carmen R. Morales, and the Montgomery County District Attorney's Office—which she referred to as Montgomery County District Attorney's Department DAs. She asserted claims for malicious prosecution, civil rights violations under 42 U.S.C.A. section 1983, and negligence under the Tort Claims Act for malicious prosecution and abuse of process by the individual defendants and for "[t]he intentional and malicious actions by the defendants, including fabricating evidence and false complaints[,]" by the Montgomery County District Attorney's Office.

On August 2, 2024, all Defendants filed a Motion to Dismiss pursuant to section 101.106 of the Civil Practice and Remedies Code and Texas Rule of Civil

6

Procedure 91a. The style on the motion read *Wen L. Patience v. Shannon Jackson and Montgomery County District Attorney's Department DA*. They argued res judicata bars Patience's constitutional claims because the federal district court dismissed all Patience's constitutional claims with prejudice. They argued Patience's state law claims against the individual defendants, including her claim for malicious prosecution, are barred by the election of remedies provision of the Tort Claims Act. They argued the Montgomery County District Attorney's Office lacks jural capacity, but accepting it as a misnomer for Montgomery County, its immunity was not waived for the alleged intentional torts. They argued the alleged violations of criminal statutes cited in Patience's petition do not create a private cause of action. They argued the statute of limitations barred all claims except for the malicious prosecution claim against Jackson.

On August 6, 2024, Patience filed a Motion for Summary Judgment on her claims against all defendants. The same day, Patience filed an Opposition to Defendants' Motion to Dismiss. She argued the federal court dismissed her federal claims "solely on jurisdictional grounds" and "did not address the merits of her state law claims." She argued her claims against the individual defendants were based on their personal conduct and are independent of the claims against their employer. Patience asserted the criminal conduct allegations went to her malicious prosecution claim. She argued a two-year limitations period applied to her malicious prosecution

7

and section 1983 claims. She contended that the Montgomery County District Attorney's Office, as an arm of Montgomery County, can be held liable for its employees' actions while performing their job duties. She argued her claims against the individual defendants were distinct from her claims against their employer and fell within the waiver of immunity for negligence claims arising from the use or operation of government property. She argued her claims have a basis in law because Texas recognizes a cause of action for malicious prosecution.

On August 15, 2024, the Defendants filed a reply to Patience's response to the Motion to Dismiss. They argued the federal district court had already ruled that Patience's constitutional claims lack merit and dismissed them with prejudice. They also contended the Election of Remedies Doctrine required the dismissal of all state law causes of action against the individual defendants.

On August 16, 2024, Patience filed a Motion to Waive the Hearing on Defendants' Motion to Dismiss and Schedule a Hearing on Plaintiff's Motion for Summary Judgment. She argued nothing supported prioritizing a motion to dismiss over a potentially dispositive motion for summary judgment. Patience filed a motion for submission of the motion to "waive" for August 23, 2023, at 9:00 a.m. The Defendants objected to the notice of submission of a motion for summary judgment on less than 21 days' notice. Patience responded that the trial court should cancel the hearing on the motion to dismiss and allow her to cure the notice defect on her

8

motion for summary judgment, and she provided a new submission notice for September 20, 2024. On August 21, 2024, Patience filed another Motion for Summary Judgment against all the defendants and their attorney. On August 23, 2024, she filed an additional Motion for Summary Judgment in which she argued that she was entitled to summary judgment based on prosecutorial misconduct and civil rights violations.

On August 27, 2024, Patience filed a Motion to Compel the Defendants to Recognize that "Romero Lee" and Carmen Morales are parties in their filings with the court. In response to this motion, the defendants responded, "Defendants are aware that Lee Romero and Carmen Morales are parties to the suit. In fact, both appeared in this case and moved to dismiss all claims against them." Patience replied that Romero and Morales were defendants pending a ruling on the motions to dismiss.

On August 30, 2024, Patience filed a document in which she stated her "concerns" regarding the defendant's lawyer's conduct in the case. She expressed concern that the lawyer had not replied to her discovery requests. She complained that his legal arguments were based on fabricated evidence, and his filings repeated the same arguments. Patience urged the court to scrutinize the discrepancies between the lawyer's statements and the actual evidence.

9

On September 4, 2024, Patience filed an Amended Notice of Submission of her Motion for Summary Judgment setting it for September 20, 2024.

On September 5, 2024, the trial court granted the Defendants' Motion to Dismiss and ordered that Patience take nothing by her claims. On September 6, 2024, Patience filed a Motion for Reconsideration, a Motion to Vacate Judgment, and a Request for Findings of Fact and Conclusions of Law. On September 26, 2024, Patience filed a Notice of Past Due Findings and a Notice of Appeal.

**Rule 91a and Pleas to the Jurisdiction**

Rule 91a authorizes dismissal of a cause of action "if the allegations, taken as true, together with inferences reasonably drawn from them do not entitle the claimant to the relief sought" or if "no reasonable person could believe the facts pleaded." Tex. R. Civ. P. 91a.1. "[T]he court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." *Id.* 91a.6. To survive a Rule 91a motion, a plaintiff's pleadings must include the "essential factual allegations supporting [the] claims," and those allegations "must be sufficient to support a judgment if ultimately proven." *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 662 (Tex. 2023) (citation omitted). We review Rule 91a dismissal orders de novo. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016).

10

"[P]leas to the jurisdiction may involve competing evidence, the denial of any probative evidence, or the assertion that the law compels a result regardless of the evidence." *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024).

> Whether the plaintiff bears an evidentiary burden depends on how the government responds to the purported waiver. In [*Tex. Dep't of Parks & Wildlife v.*] *Miranda*, [133 S.W.3d 217, 228 (Tex. 2004),] we divided pleas to the jurisdiction into two broad categories. First, the government may "challenge[ ] the pleadings." *Miranda*, 133 S.W.3d at 226. In such a plea, the government does not dispute the plaintiff's factual allegations, and evidence is irrelevant. The question is whether the alleged facts "affirmatively demonstrate a trial court's subject matter jurisdiction." *Id*. That is "a question of law reviewed de novo." *Id*. If the plaintiff's allegations neither establish jurisdiction nor negate it, the plaintiff is given an opportunity to amend its pleadings, but if the allegations negate jurisdiction, the plaintiff as a matter of law cannot establish jurisdiction, so the court must grant the plea. *Id*. at 226–27. This type of plea is thus similar—though not identical—to a motion to dismiss under Rule 91a in that it asserts that the plaintiff's allegations, taken as true, do not show a waiver of immunity. *See* Tex. R. Civ. P. 91a.1. In that event, the plaintiff needs to respond not with evidence but with legal argument showing the court that, as a matter of law, its allegations demonstrate an immunity waiver despite the government's contrary arguments.

*Id*.

**Findings of Fact and Conclusions of Law**

In five issues, Patience complains of the trial court's failure to file findings of fact and conclusions of law.[1] Findings of fact and conclusions of law are appropriate

---

[1]The issues are:

1. Did the trial court violate Ms. Patience's procedural rights by failing to issue Findings of Fact and Conclusions of Law as required by Texas Rule of Civil Procedure 297, thereby depriving her of the ability to understand the legal basis of the ruling, undermining the fairness and transparency of the judicial process,

in a bench trial where the trial court acts as the trier of fact instead of a jury. *See* Tex. R. Civ. P. 296. Unlike a bench trial, the trial court considers a Rule 91a motion to dismiss solely on the pleadings. *See id*. 91a.1; 91a.6. "Because the trial court decides a Rule 91a motion to dismiss based upon the pleading of the causes of action, findings of fact and conclusions of law are neither required nor appropriate." *Harpole v. Rains Cnty. Appraisal Dist.*, No. 12-22-00221-CV, 2023 WL 3510829, at *6 (Tex. App.—Tyler May 17, 2023, no pet.) (mem. op.) (citing Tex. R. Civ. P. 91a.6; *WISD Taxpayers Ass'n v. Waco Indep. Sch. Dist.*, 912 S.W.2d 392, 394 (Tex. App.—Waco 1995, no pet.)). Since Patience was not entitled to findings of facts and conclusions of law, we overrule issues 1, 4, 5, 6, and 11.

---

breaching procedural rules, and compromising the integrity of the summary judgment process and her ability to effectively contest the ruling?

4. Whether the trial court's failure to provide Findings of Fact and Conclusions of Law, as mandated by Texas Rule of Civil Procedure 297, deprived Ms. Patience of the ability to comprehend the rationale behind the court's ruling, thus compromising the fairness of the judicial process?

5. Whether the trial court's delay in issuing the required Findings of Fact and Conclusions of Law impaired Ms. Patience's ability to properly challenge the dismissal on appeal, raising questions about the legitimacy of the court's decisions?

6. Whether the lack of specific findings and legal conclusions prevent Ms. Patience from understanding the grounds of the trial court's ruling, thereby affecting the overall fairness and transparency of the proceedings?

11. Whether the trial court violated Ms. Patience's procedural rights by failing to issue Findings of Fact and Conclusions of Law as required by Tex R. Civil Procedure 297, thereby hindering her ability to understand the legal basis of the court's ruling and undermining the fairness and transparency of the judicial process?

## Venue

Patience presents a single issue related to venue.[2] The Fort Bend County District Court transferred the entire case to Montgomery County, rather than severing Patience's claims against Jackson and transferring only the severed part of the case. Patience provides no argument or authority to support her issue, nor does she provide a cite to the clerk's record where she asked the trial court to sever her claims against Jackson from the remainder of the case or even objected to transferring claims against defendants who had not filed a motion to transfer or joined a motion to transfer. We overrule the issue as inadequately briefed. *See* Tex. R. App. P. 38.1(i). Therefore, issue 32 is overruled.

## Res Judicata

In nineteen issues, Patience presents issues that relate to the claims the federal district court dismissed with prejudice for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).[3] The federal district court dismissed

---

[2]Issue 32: "Procedural Defects in Motion to Transfer Venue: Whether the motion to transfer venue, filed only for one defendant, can transfer the entire case and if it properly considers the jurisdiction and rights of the other defendants and parties?"

[3]The issues are:

2. Whether the trial court erred in applying claim preclusion based on the federal court's dismissal of Ms. Patience's claims, thereby preventing her from asserting valid state law claims in state court?

12. Whether the dismissal of Ms. Patience's claims was improper given the serious allegations that the Defendants, including the district attorneys and law enforcement officers, fabricated evidence, filed false complaints, and provided false

information under oath, resulting in violations of her due process rights under the 4th, 5th, and 14th Amendments to the U.S. Constitution?

14. Whether the trial court failed to adequately address allegations that fabricated evidence, made false statements and filed wrong complaints under oath were used against Ms. Patience, constituting a violation of her constitutional rights 14th Amendment, 6th Amendment?

18. Selective Prosecution: Whether the trial court overlooked evidence suggesting that Ms. Patience was selectively prosecuted based on fabricated evidence and charges, resulting in violations of her equal protection rights under the Fourteenth Amendment?

22. Whether the final judgment was signed and filed by Judge Werlein on the same day that Mr. Plake submitted it to the court clerk?

25. Federal Preclusion of State Claims: Whether the federal court's prior dismissal of Ms. Patience's claims on jurisdictional grounds precludes her from bringing the same claims in state court?

27. Did the defendants, by fabricating evidence and making false statements, violate Ms. Patience's constitutional rights under due process?

35. Whether the failure of the trial court to address Ms. Patience's claims of prosecutorial misconduct, evidence fabrication, and fabricated charges, as influenced by Mr. Plake's alleged misrepresentations, constitutes a violation of Ms. Patience's constitutional rights to due process and a fair trial. Did these misrepresentations hinder the court's ability to fairly evaluate the substantive claims in Ms. Patience's case?

37. Prosecutorial Misconduct and Use of Fabricated Evidence: Whether the actions of the Appellees, including filing false charges, making false statements, and using fabricated evidence, constitute prosecutorial misconduct that undermines the integrity of the judicial process and Ms. Patience's right to a fair trial?

40. Wrongful Arrest and Incarceration: Whether the arrest and subsequent incarceration of the Appellant were based on false and fabricated information provided by law enforcement, thereby violating the Appellant's due process rights.

42. Violation of Constitutional Rights: Whether the Appellees' alleged actions, including fabrication of evidence and perjury, constitute a violation of Ms. Patience's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments, as well as under 42 U.S.C. § 1983, Color [of] Law?

62. Were Ms. Patience's Fourth Amendment rights violated due to the false information provided by Christine and the fabricated charges by the defendants against her? Can the fabricated evidence be used to shield the defendants under qualified immunity?

14

Patience's section 1983 claims, including: a Fourth Amendment malicious prosecution claim that the defendants lacked probable cause to charge Patience with Terroristic Threat of Family/Household and Assault Causing Bodily Injury Family Violence; Fourteenth Amendment due process and equal protection claims; Sixth Amendment right to speedy trial, right to trial by an impartial jury, right to be informed of the nature and cause of the accusation, and right of confrontation claims;

---

64. Did the fabrication of evidence and false statements by defendants (Ms. Jackson, Mr. Lee, law enforcement deputy and others) violate Ms. Patience's due process rights under the Fifth and Fourteenth Amendments?

67. Whether res judicata bars Ms. Patience's federal claims considering all of her federal claims were dismissed with prejudice by the Federal Court prior to reman[d]?

71. Whether the court's reliance on fabricated evidence, including false claims of bodily injury and threats, violated Ms. Patience's due process rights under the U.S. Constitution?

75. Were Ms. Patience's Fourth Amendment rights violated due to the false complaints, information reports provided by Christine, Jackson, Lee and deputy McClintock and the fabricated charges against her? Can the fabricated evidence be used to shield the defendants under qualified immunity?

77. Did the fabrication of evidence and false statements by defendants (Ms. Jackson, Mr. Lee, Ms. Morales, Ms. Tyler, and others) violate Ms. Patience's due process rights under the Fifth and Fourteenth Amendments?

81. Can the District Attorney's Office be held liable under the Monell doctrine for directing, encouraging, or demonstrating deliberate indifference to the creation of falsified documents?

85. Did the Montgomery County District Attorney's Office's failure to prevent or address the misconduct of its employees create liability under Monell v. Department of Social Services for institutional policies or customs that caused the harm?

a Fifth Amendment right against self-incrimination claim; Fourth Amendment search and seizure claims; and First Amendment right to petition claims. Additionally, the federal district court ruled: Romero and Morales were entitled to absolute immunity for their quasi-judicial acts of initiating and prosecuting the State's case against Patience; Patience's suit sought recovery from a legal entity that does not exist for her purposes; Montgomery County could not be held liable on a respondeat superior theory; the Montgomery County District Attorney could not be held liable in his official capacity; and Patience failed to allege a *Bivens* claim against federal officials. The federal district court declined to exercise supplemental jurisdiction over Patience's state law claims, and those claims alone were remanded to state court.

Some of Patience's specific complaints concern the federal district court judge. This Court lacks jurisdiction over federal courts. *See* Tex. Const. art. 5, § 6 ("Said Court of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law."); Tex. Gov't Code Ann. § 22.220.

In her brief, Patience argues that the trial court erred in granting the Rule 91a Motion to Dismiss when she says she "provided ample documentation, including

16

police reports, text messages, and procedural records, to substantiate her allegations." As explained above, courts do not consider evidence when deciding a Rule 91a motion. *See* Tex. R. Civ. P. 91a.6; *In re Oncor Electric Delivery Co. LLC*, No. 24-0424, ___ S.W.3d ___, 2025 WL 1774438, at *3 (Tex. June 27, 2025) (orig. proceeding) (not yet reported).

In her reply brief, Patience argues res judicata does not apply to her state law claims because the federal district court declined to exercise supplemental jurisdiction over them. But in her brief she claims that the defendants violated her federal constitutional rights and are liable for those violations pursuant to 42 U.S.C. section 1983. The federal district court did not remand those claims to state court; instead, it ruled that Patience failed to state a claim on which relief could be granted. "Generally, a federal court's dismissal with prejudice of a 12(b)(6) motion is a final judgment on the merits for res judicata purposes." *Stevens v. Bank of Am., N.A.*, 587 F. App'x 130, 133 (5th Cir. 2014) (citation omitted); *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (discussing res judicata in the context of summary judgment motion).

Patience argues the doctrine of res judicata does not apply here because it is an affirmative defense that must be proven. "Rule 91a limits a court's factual inquiry to the plaintiff's pleadings but does not so limit the court's legal inquiry." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex.

17

2020). "In deciding a Rule 91a motion, a court may consider the defendant's pleadings if doing so is necessary to make the legal determination of whether an affirmative defense is properly before the court." *Id*. Rule 91a permits motions to dismiss based on an affirmative defense "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1.

Appellees' motion to dismiss did not require the trial court to look beyond Patience's live pleading which alleged facts establishing the affirmative defense of res judicata. Specifically, she alleged that her lawsuit was removed to federal court, that the defendants filed a motion to dismiss, that the federal judge signed a final judgment which she unsuccessfully appealed to the Fifth Circuit, and that her petition for writ of certiorari was denied by the United States Supreme Court. Patience cannot reconstitute her federal claims by making them again in state court. We conclude those claims are barred, so we overrule issues 2, 12, 14, 18, 22, 25, 27, 35, 37, 40, 42, 62, 64, 67, 71, 75, 77, 81, and 85.

### Texas Tort Claims Act

Eight issues in Patience's brief address the trial court's implied ruling that Patience's state law claims are barred by the Texas Tort Claims Act's Election of Remedies provision.[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106. In her brief,

---

[4]The issues are:

Patience argues section 101.106 does not apply when the claims against individual employees are rooted in intentional misconduct. She fails to appreciate the distinction between a claim brought "under" the Tort Claims Act and a claim for which immunity from suit is waived *by* the Act. As the Supreme Court explained in *Franka v. Velasquez*, "we have never interpreted 'under this chapter' to only

---

21. Governmental Immunity: Whether the trial court incorrectly found that Ms. Patience's claims fall within the protections of governmental immunity under the Texas Tort Claims Act, thus denying her the ability to pursue valid tort claims against the Appellees?

26. Election of Remedies Doctrine: Whether the Election of Remedies Doctrine requires the dismissal of state law claims against individual Appellees when those claims are based on personal conduct rather than their roles as government employees?

28. Immunity Under the Texas Tort Claims Act: Whether Ms. Patience's negligence and tort claims fall within any waivers of immunity provided by the Texas Tort Claims Act?

61. Whether the Election of Remedies Doctrine requires dismissal of all state law claims brought against the individual Defendants?

65. Can Ms. Patience maintain her state law claims against Shannon Jackson, given the Election of Remedies Doctrine and the alleged fabrication of probable cause?

78. Can Ms. Patience maintain her state law claims against Shannon Jackson, given the Election of Remedies Doctrine and the alleged fabrication of probable cause?

80. Can both the Montgomery County District Attorney's Office and its staff be held liable for creating falsified documents using government resources, based on legal principles and precedents addressing governmental liability for intentional misconduct and constitutional violations?

82. Can the District Attorney's Office be held liable under respondeat superior if the individual defendants acted within the scope of their employment when creating the falsified documents, assuming the actions do not constitute intentional torts?

19

encompass tort claims for which the Tort Claims Act waives immunity." 332 S.W.3d 367, 369 (Tex. 2011) (citations omitted). "[A] tort suit against the government, as distinct from a statutory claim, is brought 'under' the Act for purposes of section 101.106, even though the Act does not waive immunity[.]" *Id*. at 379.

In the amended petition she filed in December 2022, Patience alleged:

> [E]vidence that the employees of the Montgomery County District Department filed offense complaints and information and charged the plaintiff Wen Lian Patience with Terroristic Threat of Family/ household, and Assault Cause Bodily Injury to Family Violence was efficient [sic] to show that **criminal charges were instituted on behalf of the Montgomery County District Attorney's Department;** consequently, the plaintiff amended the pleading dismissing Shanna Jackson as the defendant in the original petition. In other words, the Montgomery County District Department, DA is the defendant in this case. *The grounds of liability for governmental entities under the Tort Claims Act is the negligence of a governmental "employee" in the operation, Governmental entities may also be liable for the negligence of "employees" in connection with a blatant violation of the legal duty with respect of the rights of others. A governmental unit in the state is liable for the negligence of an employee acting within his/her scope of employment.*

In the amended petition, Patience alleged the trial court had subject matter jurisdiction, as follows:

> *The Texas Civil Practice and Remedies Code Title 5, Chapter 101. The Act partially waives immunity for wrongs committed by governmental units and their employees by granting Texans permission to sue in certain specific limited circumstances defined under the Act. Tex. Civ. Prac. & Rem. Code Ann. 101.021 (West 2019), A governmental unit in the state is liable for* ***the negligence of an employee acting*** *with his/her scope of employment.*

20

The Court has subject-matter jurisdiction over this claim against the defendant, **Montgomery County District Attorney's department** under the Texas Tort Claims Act (TTCA)[.]

Patience tries to distinguish *Franka* by arguing that she has sued the defendants for acts that the individual employees performed outside the scope of their official duties, but she describes those acts as charging her with Class A misdemeanors. The acts are clearly in the scope of employment as alleged by Patience in her Amended Petition. As explained in *Mission Consolidated School District v. Garcia*:

> Under the Tort Claims Act's election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when suit is filed against the governmental unit only, *id.* § 101.106(a); (2) when suit is filed against both the governmental unit and its employee, *id.* § 101.106(e); or (3) when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit, *id.* § 101.106(f). When suit is filed against the employee, recovery against the governmental unit regarding the same subject matter is barred unless the governmental unit consents to suit. *Id.* § 101.106(b). Because the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually.

253 S.W.3d 653, 657 (Tex. 2008). Recovery against the individual defendants is barred because Patience sued the governmental entity for the actions taken by its employees. After Patience sued the governmental entity, she tried to allege personal liability against the employees, but in addition to having irrevocably elected to pursue only the governmental entity, the acts she described were objectively

21

connected to the individuals' employment with the government rather than a course of conduct not intended by the employees to serve any purposes of the employer. *See Seward v. Santander*, 713 S.W.3d 341, 354 (Tex. 2025) (applying section 101.106(f)). Therefore, we overrule issues 21, 26, 28, 61, 65, 78, 80, and 82.

## Immunity

In thirty-seven issues, Patience argues the individual appellees are not immune.[5] In her brief, Patience argues, "prosecutors lose absolute immunity when

---

[5] The issues include:

3. Whether the trial court erred by dismissing Ms. Patience's claims of prosecutorial misconduct, malicious prosecution, perjury, the fabrication of charges and evidence without providing sufficient evidence or explanation to support its decision, thus depriving her of the opportunity to seek redress for the alleged prosecutorial misconduct and constitutional violations?

7. Did the trial court err in dismissing Ms. Patience's claims of prosecutorial misconduct, malicious prosecution, perjury, and the fabrication of charges and evidence?

8. Did Judges fail to properly scrutinize motions and evidence submitted by the prosecution and defense, thereby allowing fabricated evidence and charges, complaints with false statements under oath, filing misleading information, and misrepresentations to influence the proceedings?

9. Whether there was sufficient evidence to establish that the Appellees Defendants, including law enforcement Deputies, the District Attorney's office and its staff initiated criminal proceedings against Ms. Patience without probable cause and with malice?

31. The failure to align McClintock's report with the facts challenges whether the prosecution relied on false or fabricated evidence?

38. Adequacy of Evidence to Support Charges: Whether the prosecution failed to present sufficient evidence to support the charges of Assault Causing Bodily Injury and Terroristic Threat of Family/Household against Ms. Patience, given the absence of medical records or documented injuries?

39. Misidentification of Witness: Whether the prosecution's misidentification of the witness, Christine Hodson, as "Christine Patience" constitutes a material

misrepresentation of fact, thereby undermining the credibility of the charges and impacting the fairness of the proceedings?

41. Validity of Prosecutorial and Sovereign Immunity Defenses: Whether the Appellees, including prosecutors and law enforcement officers, are entitled to prosecutorial, qualified, or sovereign immunity given the allegations of intentional misconduct, such as fabricating evidence and making false statements.

43. Malicious Prosecution and Abuse of Process: Whether the Appellees' actions meet the elements of malicious prosecution and abuse of process under Texas law and federal civil rights law, given that the criminal charges against Ms. Patience were dismissed. Whether all claims against the Montgomery County District Attorney's Office should be dismissed?

44. Entitlement to Damages and Attorney's Fees: Whether Ms. Patience is entitled to monetary relief, including compensatory and punitive damages, as well as attorney's fees and costs, due to the Appellees' alleged misconduct, malicious prosecution, fabrication charges, making false statements, and the resulting harm.

45. Did the Defendants fabricate or alter the charging instrument or other legal documents to falsely accuse Ms. Patience of assaulting and threatening Richard Patience and Christine H. Hodson?

46. Did the Defendants make false statements and exaggerate the facts surrounding the altercation between Ms. Patience and Mr. Richard to justify her arrest and subsequent charges?

47. Was there sufficient probable cause to arrest and charge Ms. Patience, or were the charges and actions taken against her motivated by animosity and a desire to maliciously prosecute her?

48. Did the witness (Christine Hendricks Hodson) fabricate statements, such as claiming to see blood on Richard's face and alleging that Ms. Patience had a gun, and did these fabrications undermine the probable cause for Ms. Patience's arrest?

49. The inclusion of "Christine Patience" as a fabricated entity raises whether the prosecution engaged in misconduct to mislead the court?

50. Did the Montgomery County District Attorney's office knowingly fabricate evidence, including creating a fictitious "Christine Patience" and altering photographs, to falsely incriminate Ms. Patience?

51. Did Deputy McClintock's report contain deliberate falsehoods, including exaggerated claims about visible blood, to support an unfounded narrative?

52. The failure to align McClintock's report with the facts challenges whether the prosecution relied on false or fabricated evidence?

53. Did District Attorneys Jackson and Lee knowingly file fabricated complaints and information based on false evidence, violating legal and ethical standards?

54. The reliance on fabricated complaints raises questions about whether the charges against Ms. Patience were grounded in fact or motivated by misconduct?

55. Did the absence of medical documentation and failure to provide first aid undermine the credibility of claims regarding Mr. Patience's injuries?

56. The absence of documented evidence raises questions about whether Mr. Patience's injuries were fabricated or exaggerated?

58. Did the District Attorney Tamara Tyler unfairly exploit Ms. Patience's medical condition to prejudice her case and undermine her credibility?

59. Did District Attorney Tamara Tyler exaggerate Ms. Patience's behavior in the courtroom, misrepresenting her conduct to impose unwarranted conditions on her bond? and misuse her physician's letter to support claims of emotional outbursts during court appearances in "the Motion to Amend Conditions of Bond"?

63. Did Shannon Jackson, an employee of the District Attorney's office, fabricate evidence by altering Christine's name to "Christine Patience" and falsely charging Ms. Patience? How does this behavior affect the validity of the charges?

68. Whether the alleged violation of criminal statutes provides a civil cause of action?

69. Whether the dismissal of Ms. Patience's criminal cases indicates a lack of probable cause for the charges brought against her?

70. Whether the fabrication of evidence and charges by law enforcement, Appellees, and prosecutors constitutes prosecutorial misconduct and malicious prosecution under Texas law?

72. Whether the dismissal of the criminal cases entitles Ms. Patience to pursue claims for damages due to reputational harm, emotional distress, and financial losses?

73. Did the witness (Christine Hendricks Hodson) fabricate evidence and statements, such as claiming to see blood on Richard's face and alleging that Ms. Patience had a gun, and did these fabrications undermine the probable cause for Ms. Patience's arrest?

74. Can qualified immunity apply when Appellees-Defendants, including officers and district attorneys act based on false statements, fabricated evidence and charges, exaggeration of facts, perjury and malicious prosecution?

76. Did Shannon Jackson, an employee of the District Attorney's office, fabricate evidence by altering Christine's name to "Christine Patience" and falsely charging Ms. Patience? How does this behavior affect the validity of the charges?

83. Did an official policy or custom within the Montgomery County District Attorney's Office enable the misuse of government resources, resulting in the creation of falsified documents and harm to Ms. Patience?

they engage in acts such as fabricating evidence or submitting false statements, as they are not protected prosecutorial functions." As supporting authority, Patience relies on a case about whether a prosecutor may be held liable under 42 U.S.C. section 1983 for conduct in obtaining an arrest warrant. *See Kalina v. Fletcher*, 522 U.S. 118 (1997). However, the federal district court has already disposed of Patience's section 1983 claims. Patience tried to bring section 1983 claims in the state court, but the Defendants successfully argued in their Motion to Dismiss that those claims were barred by res judicata, as discussed above.

Appellees limited the immunity claim presented in the Motion to Dismiss to the claims Patience asserted against the Montgomery County District Attorney's Office as the employer of the individual defendants. They argued those claims fail because its immunity is not waived for the alleged intentional torts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) ("This chapter does not apply to a claim: . . .

---

84. Did an informal policy within the District Attorney's Office allow for the abuse of bond recommendations, leading to unjustified restrictive conditions on Ms. Patience?

86. Does the evidence of malice and intentional misconduct by Appellees justify holding them individually and the District Attorney's Office accountable under state and federal law?

87. Can Ms. Patience establish malicious prosecution in her civil case based on the dismissal of her criminal charges and the lack of probable cause for initiating the prosecution?

88. Can the Montgomery County District Attorney's Office be held liable for maintaining policies or customs that enabled or tolerated the misconduct that harmed Ms. Patience?

25

arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.").

In her reply brief, Patience concedes section 101.057(2) excludes intentional torts from the waiver of immunity described elsewhere in the Tort Claims Act. *See id*. § 101.021 ("A governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law; and (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."). She argues section 101.057(2) does not immunize individual actors for ultra vires or malicious acts. The Motion to Dismiss filed in this case did not assert immunity of the individual defendants as a basis for dismissal under Rule 91a or a plea to the jurisdiction. Therefore, we overrule issues 3, 7, 8, 9, 31, 38, 39, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 58, 59, 63, 68, 69, 70, 72, 73, 74, 76, 83, 84, 86, 87, and 88.

## Limitations

Two issues in Patience's brief address whether the applicable statute of limitations bars her claims.[6] In her appellate brief, Patience argues section 16.003(a) of the Civil Practice and Remedies Code applies to her malicious prosecution claim. However, the applicable statute is section 16.002. *See id.* § 16.002(a). ("A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues.").

In her reply brief, Patience concedes a one-year statute of limitations applied. She argues the one-year limitations period runs from the date the criminal charges were dismissed, which she says occurred on November 17, 2021. In their Motion to Dismiss, Appellees stated, "As a result of the charges Ms. Patience received deferred adjudication, which was apparently dismissed on November 17, 2021, after she completed eight mental health sessions pursuant to a court order." Thus, it appears the date of accrual and the length of the limitation period is undisputed.

---

[6]The issues are:

66. Are Ms. Patience's claims against Ms. Jackson time-barred, or do the continuing actions of the defendants (e.g., fabrication and false reporting) toll the statute of limitations? Whether the suits against everyone except Ms. Jackson are time-barred.

79. Are Ms. Patience's claims against Ms. Jackson time-barred, or do the continuing actions of the defendants, fabrication, and false complaints and reporting toll the statute of limitations?

Patience filed her lawsuit against Shannon Jackson on November 16, 2022, within the one-year limitations period, and Jackson did not dispute timeliness due to delayed service of citation on her. In their Motion to Dismiss, Appellees agreed Patience timely filed her malicious prosecution claim against Jackson, and they did not seek a limitations-based dismissal of the malicious prosecution claim against Jackson. Appellees argued the remaining claims—other than the malicious prosecution claim against Jackson—were filed too late under the applicable statute of limitations for each claim.

In her reply brief, Patience argues, "Texas law allows the addition of new parties to relate back to the original petition if they arise out of the same facts." The case she cites as authority does not support her argument. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004) ("Ordinarily, an amended pleading adding a new party does not relate back to the original pleading."); *see also Chavez v. Andersen*, 525 S.W.3d 382, 386 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Nolan v. Hughes*, 349 S.W.3d 209, 214 (Tex. App.—Dallas 2011, no pet.); *Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 863 (Tex. App.—Beaumont 1995, writ denied) (for statute of limitations purposes, the remaining plaintiffs who were added to the action by an amended original petition must use the date the amended original petition was filed to determine viability of their claims). Therefore, we overrule issues 66 and 79.

## Litigation Conduct

Nine issues in Patience's brief present complaints about opposing counsel's litigation conduct.[7] Patience's accusations of misconduct are not supported by the

---

[7]The issues are:

13. Whether the court improperly granted the Defendants-Appellees' motions to dismiss based on misrepresentations of facts by the Defendants' attorney, Mr. Daniel D. Plake, and without addressing the substantive legal claims raised by Ms. Patience regarding prosecutorial, District attorneys and law enforcement misconduct?

24. Whether Appellees' attorney, Mr. Plake, engaged in actions or omissions including the use of incorrect names, reliance on false statements by witness Christine H. Hodson, exaggerations, and misrepresentations—that compromised the fairness of the proceedings?

29. Omission of Parties in Hearing Notice: Whether the exclusion of certain parties from the Amended Notice of Hearing by the Appellees' attorney Daniel Plake constitutes a procedural defect, violating due process and affecting the validity of the hearing notice?

30. Appellees' attorney Plake's conduct, such as in Defendants' Motion to Dismiss using incorrect names, omitting defendants' name for case style or potentially submitting false information and exaggeration facts, micropredation of witness Hodson and Mr. Patience's marital status was significant enough, Ms. Patience may seek sanctions or other penalties for misconduct?

33. Intentional Misconduct by Appellees: Whether the Appellees, including their attorney Daniel Plake, engaged in intentional misconduct and misrepresentation that violated Ms. Patience's constitutional rights?

34. Whether the trial court erred in granting the Defendants' motions to dismiss based on filings that contained alleged factual misrepresentations by the Defendants' attorney, Daniel D. Plake. Did [t]he alleged false statements mislead the court into granting the motion to dismiss, thus prejudicing Ms. Patience's case?

36. Whether Mr. Plake's conduct in making alleged false statements in court filings constitutes an ethical violation warranting sanctions or other remedies. Did Mr. [Plake]'s conduct demonstrate reckless disregard for the truth or deliberate falsification, thus constituting professional misconduct?

57. The use of false information in legal filings undermines whether the court was provided with a fair and accurate representation of the facts?

29

appellate record. She accused opposing counsel, Mr. Daniel D. Plake, of using "incorrect names" when an objective review of the record demonstrates he was accurately relating what the documents in the criminal cases stated and correcting Patience's misnomers in her pleadings in the civil case. That said, it should be noted that according to the documents attached to her Original Petition, Patience pleaded Guilty to the assault family violence charges as stated in Jackson's complaint and she took a plea deal which gave her deferred adjudication.

Patience accuses opposing counsel of intentionally omitting Romero and Morales from the style on Defendants' Motion to Dismiss. The rather vague reference to "Defendants" and the omission of Romero's and Morales's names from the style on the Motion to Dismiss evidently aroused her suspicion, but we note that Patience herself changed the style when she filed her First Amended Original Petition. Regardless, the style appearing on a petition or motion might relay some information about the filing party's opinion about which parties remain in the case, but it is the contents that matter. *See Powell*, 794 S.W.3d at 448 ("A party's

---

60. Did defense attorney Daniel D. Plake knowingly submit false and misleading statements and filings ("Defendants' Motion to Dismiss") to the court, such as misrepresenting the facts and marital status of Christine H. Hodson and Richard Patience, and fabricating injuries while knowingly and willfully relying on false statements from witness Hodson and [Appellees] Ms. Jackson and Mr. Lee?

characterization of its pleadings does not control how the courts review them.").

When Patience sued the government employer for its employees' conduct in her December 2022 First Amended Petition, Patience made an irrevocable election to recover against the government employer, and as a matter of law could not recover damages for malicious prosecution from the individual defendants. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). It is not misconduct for opposing counsel to seek a dismissal of the claims against the individual defendants under the Election of Remedies provision of the Tort Claims Act. Therefore, we overrule issues 13, 24, 29, 30, 33, 34, 36, 57, and 60.

## Dismissal

Seven issues presented in Patience's brief challenge the trial court's decision to rule on the Motion to Dismiss and dismiss the case with prejudice without first ruling on Patience's Motion for Summary Judgment.[8] Appellees invoked Rule 91a

---

[8]The issues are:

10. Whether Ms. Patience's causes of action have any legal basis or merit under Texas law in this case?

15. Whether the case was dismissed improperly, based on either procedural errors or substantive issues with the court's decision?

16. Judicial Discretion: Whether Judge Kristin Bays exercised proper judicial discretion in reviewing the evidence and circumstances, leading to the appropriate decision to dismiss the charges against Ms. Patience and failed to address the pending summary judgment motion, which was properly amended and noticed, before issuing a final ruling on the defendant's motion to dismiss?

17. Whether the motion to dismiss for failure to state a claim was valid and sufficient?

in a motion filed on August 2, 2024. Rule 91a required that the trial court rule on the motion within 45 days, or September 16, 2024. *See* Tex. R. Civ. P. 91a.3(c). Patience filed her Motion for Summary Judgment on August 6, 2024. On August 16, 2024, she filed a Notice of Submission for August 23, 2024, on her Plaintiff's Motion to Waive Hearing on Defendants' Motion to Dismiss and Schedule Hearing on Plaintiff's Motion for Summary Judgment. Appellees objected to setting a motion for summary judgment on less than 21-days' notice. *See id*. 166a(c) ("Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing."). In response, Patience asked for a submission date that was four days after the trial court's deadline to rule on the Rule 91a motion. Patience has not shown that the trial court abused its discretion by ruling on the Motion to Dismiss without first ruling on the Motion for Summary Judgment.

The trial court dismissed Patience's case with prejudice. Patience included an issue that questioned whether a dismissal with prejudice was proper and in

---

19. Whether the courts' dismissal of the defendants "with prejudice" was proper and in accordance with the law?

20. Summary Judgment Entitlement: Whether Ms. Patience is entitled to summary judgment due to the Appellees' alleged pattern of intentional misconduct, where no genuine dispute of material fact exists?

23. Whether Ms. Patience's response to the motion to dismiss, along with the attached exhibit, was considered by the court before the dismissal with prejudice was entered?

accordance with the law, but she made no argument and cited no authority to support the issue. We conclude the issue was inadequately briefed. *See* Tex. R. App. P. 38.1(i). Therefore, we overrule issues 10, 15, 16, 17, 19, 20, and 23.

Having overruled all of Patience's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON<br>
Chief Justice

Submitted on May 2, 2025
Opinion Delivered August 28, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.